664 So.2d 532 (1995)
Lynette F. POIRIER, Plaintiff-Appellee,
v.
Fernest J. POIRIER, Jr., Defendant-Appellant.
No. 95-394.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1995.
*533 Allan Leland Durand, Lafayette, for Lynette F. Poirier.
Gerard B. Wattigny, New Iberia, for Fernest J. Poirier Jr.
Before COOKS, WOODARD and AMY, JJ.
*534 AMY, Judge.
This appeal arises from the partition of former community property belonging to Lynette F. Poirier (hereafter "Mrs. Poirier") and Fernest J. Poirier, Jr. (hereafter "Mr. Poirier"). For the reasons which follow, the judgment is affirmed.

FACTS
On October 4, 1989, Mrs. Poirier filed for divorce and both Poiriers signed a document styled "Community Property Partition." Mrs. Poirier subsequently filed a petition to annul the partition, and in Poirier v. Poirier, 626 So.2d 868 (La.App. 3 Cir.1993), writ denied, 94-0161 (La. 3/11/94), 634 So.2d 389, this court affirmed the trial court's annulment of the "Community Property Partition Agreement," finding that it did not comply with the requirements of La.Civ.Code art. 2329.
The partition action was then held on August 8, 1994, and judgment was rendered on September 19, 1994. In reasons for judgment, the trial court explained that as a result of the October 4, 1989 partition, Mrs. Poirier received former community property which had a value of $127,861.00 and Mr. Poirier received property that had a value of $247,350.00. To arrive at these sums, the trial court determined which former community property had been allocated to each party in the October 4, 1989 partition agreement and then the trial court added up the values of the former community assets received by each side at the dollar amount the parties agreed to in the October 4, 1989 partition agreement.
Next, the trial court valued the assets which were not disposed of in the 1989 agreement. The trial court valued the 1989 sugar cane crop at $118,861.00, and allocated one-half of this amount, or $59,431.00, to each party. The trial court then determined that two $50,000 certificates of deposit, in the names of the Poiriers' children, were community property and awarded one certificate to each party. The court added $10,678.00 to Mr. Poirier's total to account for an IRA which he received in the original partition but had been omitted from the list of assets in that partition. This brought the total allocated to Mrs. Poirier to $237,292.00, and that allocated to Mr. Poirier to $367,459.00. The court then ordered Mr. Poirier to pay Mrs. Poirier $65,083.50, which equalized the division of property, bringing each party's total to $302,375.50. Legal interest was awarded to Mrs. Poirier on her share of the 1989 community sugar cane crop and on the $65,083.50 equalization payment. The interest was to run from the date of judicial demand until paid.
Mr. Poirier appealed the judgment, assigning four errors: (1) the trial court erred in awarding Mrs. Poirier interest from the date of judicial demand rather than from the date of trial on the merits; (2) the trial court failed to award Mr. Poirier recompense for the work he did on the 1989 sugar cane crop; (3) the trial court erred in denying Mr. Poirier's exception of res judicata as to two certificates of deposit; and (4) in the alternative, that the trial court erred in finding that the certificates of deposit were property of the community rather than of the Poiriers' children.

INTEREST
The trial court awarded Mrs. Poirier legal interest from the date of judicial demand on the sums it ordered Mr. Poirier to pay her in partitioning the community property. Mr. Poirier contends that this is incorrect and that interest is due merely from August 8, 1994, the date of the trial.
In Allen v. Allen, 602 So.2d 759 (La.App. 3 Cir.1992), we held that when a community is partitioned, legal interest is only owed from the date of the trial partitioning the community property rather than from the earlier date of judicial demand because La.R.S. 9:2801(4)(a) requires the trial court to value the community property as of the date of the trial of the partition.
Interest is normally awarded only from the date of partition of the former community property, rather than from the earlier date of judicial demand, because the valuation at the time of the partition in accordance with La.R.S. 9:2801(4)(a) already takes into consideration the appreciation in value of the property between the time of judicial *535 demand and that of the time the valuation is made. Interest is awarded from the date of partition to make the division of the assets truly equal by compensating the party who has not enjoyed the use of former community property to which he was rightfully entitled.
However, the case now before us differs from the typical community property partition in that the parties entered into a partition agreement on October 4, 1989, purporting to terminate the community property regime and they presumably assumed control of various items of former community property on October 4, 1989. This partition was subsequently found to be invalid and nearly five years later, the trial court was asked to judicially partition the community. Although the partition hearing occurred on August 8, 1994, the trial court used the October 4, 1989 values of the former community property to which the parties had agreed in their partition agreement. Furthermore, the trial court elected to set the value of the assets that were not disposed of in the original partition agreement at the value they had in 1989.
Since the value of the community assets used by the trial court in partitioning the community reflects the value that the property had as of October 4, 1989, rather than the value the property had as of August 8, 1994, the date of the partition, it was not inequitable for the trial court to award judicial interest from the date of judicial demand on the sum it awarded to Mrs. Poirier. Accordingly, we will not disturb the award of interest on appeal.

WORK ON SUGAR CANE CROP
Mr. Poirier next alleges that the trial court erred in not compensating him for the year of labor he put into the 1989 sugar cane crop, a thing which he states is a community asset.
In the instant case, the Written Reasons for Judgment state that the parties did not dispute that Mr. Poirier received $157,759.00 from the mill for the 1989 sugarcane crop. In reasons for judgment, the trial court summarized expert and lay testimony on the value of the crop and stated:
The Court rejects all values suggested by the parties, and values the 1989 sugarcane crop as follows: $157,759 in direct payments, minus $38,898 harvesting expenses, equals $118,861 net value. One-half of this amount, or $59,431 will be awarded to each party.
The community of acquets and gains was terminated as of October 4, 1989, and harvest began on the sugar cane crop on October 15, 1989. Thus, the work Mr. Poirier performed in growing the crops was performed during the existence of the community property regime; whereas, the work done to harvest the crops was done after the termination of the community property regime. We have considered the claims for reimbursement at the termination of the community property regime set forth in the Civil Code, and we conclude that none of them entitle Mr. Poirier to receive compensation for his labor under the facts of this case. Furthermore, we note that a trial court is vested with great discretion in effecting a fair partition of the community. Queenan v. Queenan, 492 So.2d 902 (La.App. 3 Cir.1986). The trial court awarded Mr. Poirier harvesting expenses. Since we are unable to conclude that the partition as a whole was unfair, we find that the trial court did not abuse its discretion in failing to award Mr. Poirier a sum of money to compensate him for his labor.

RES JUDICATA
Mr. Poirier assigns as his third error the trial court's denial of his exception of res judicata as regards the ownership of the two $50,000 certificates of deposit.
Under La.R.S. 13:4231, the doctrine of res judicata operates to bar relitigation with respect to any issue actually litigated, provided that there was a "valid and final judgment." (Emphasis added). The Louisiana Supreme Court recently stated that:
The doctrine of res judicata is stricti juris; any doubt concerning the application of the principle of res judicata must be resolved against its application. The doctrine of res judicata cannot be invoked unless all its essential elements are present, and each *536 necessary element must be established beyond all question.
Kelty v. Brumfield, 93-1142, pp. 7-8 (La. 2/25/94), 633 So.2d 1210, 1215, rehearing denied (citations omitted).
In the matter now before us, the trial court's written reasons for annulling the "Community Property Partition Agreement" indicate that the trial court did not intend to issue a final judgment as to the status of the certificates of deposit. The trial court referred to the certificates of deposit in the context of whether the agreement was lesionary, specifically stated that its factual findings were limited to the question of lesion, and openly questioned the validity of the donation of the certificates of deposit.
In this matter, the judgment itself, issued August 10, 1992, annuls the "Community Property Partition Agreement" and orders that, per La.R.S. 9:2801, the parties file descriptive lists of the property formerly belonging to the community. The judgment did not dispose of any property, much less the certificates of deposit specifically. Since there was no final judgment on the certificates of deposit, res judicata does not apply.
For the above reasons, we find this assignment of error to be without merit.

DONATION OF CERTIFICATES OF DEPOSIT
Mr. Poirier's final assignment of error is that the trial court incorrectly held that the certificates of deposit were the property of the community rather than of the children. He contends that, with money obtained from cashing a $100,000 certificate of deposit, he and Mrs. Poirier bought each of their daughters a $50,000 certificate of deposit, each certificate bearing a child's name and social security number.
Under La.Civ.Code art. 1536, an act of donation is required to effect a valid donation of an incorporeal movable. Succession of Amos, 422 So.2d 605 (La.App. 3 Cir.1982). In Amos, this court held that certificates of deposits were incorporeal movables and that the transfer of a certificate of deposit to the name of another did not constitute a valid donation because an act of donation was required. We stated:
Under the provisions of our civil code a certificate of deposit, or the credit right evidenced by a certificate of deposit is an incorporeal movable and not subject to manual gift. Therefore, even if Mrs. Amos, in transferring the certificate account, divested herself of the right to withdraw the funds and did so with donative intent, without an act passed before a notary and two witnesses, under the provisions of our civil code, there was no valid donation.
Amos, 422 So.2d at 608. In the instant case, the record shows no evidence of an authentic act sufficient for a valid donation inter vivos of an incorporeal movable.
At the time the certificates of deposit were made out in the names of the children, La. R.S. 10:3-201(4) provided an exception to Article 1536 for donations inter vivos of negotiable instruments. La.R.S. 10:3-104 further provided at that time that "[a]ny writing to be a negotiable instrument within this Chapter must ... be payable to order or to bearer." La.R.S. 10:3-104(1)(d). The certificates of deposit at issue here do not have this language indicating they are negotiable as defined under La.R.S. 10:3-110 and La.R.S. 10:3-111. The certificates simply provide the account holders' names. They are not negotiable and the exception provided by La.R.S. 10:3-201(4) does not apply; therefore, La. Civ.Code art. 1536 controls. There was no valid donation.
Based on the above, we find no error in the trial court's ruling that the certificates of deposit were community property.

DECREE
For the reasons given above, we affirm the ruling of the trial court on all matters. Costs are assessed to appellant.
AFFIRMED.